<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                    :
EDWARD J. GARCIA,                   :
                                    :   Civil Action No. 08-1648 (WJM)
            Plaintiff,              :
                                    :
        v.                          :
                                    :   **O P I N I O N**
HONORABLE LILLIAN MUNOZ, et al.,:
                                    :
            Defendants.             :
_____:

>    **APPEARANCES:**
>    EDWARD J. GARCIA, #197708, Plaintiff <u>Pro Se</u>
>    Hudson County Correctional Center
>    Kearny, New Jersey 07032

**WILLIAM J. MARTINI, District Judge**

This matter comes before the Court upon submission of a civil complaint ("Complaint") by Edward J. Garcia ("Garcia"), an inmate currently confined at Hudson County Correctional Center ("Facility") in Kearny, New Jersey.

The instant matter is one of four legal matters received by the Clerk from Garcia during April 2008. Specifically, the Clerk received the following Garcia's submissions:

1.  On April 2, 2008, the Clerk received the instant Complaint, executed pursuant to 42 U.S.C. § 1983. <u>See</u> Docket Entry No. 1;

2.  On April 9, 2008, the Clerk received Garcia's petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254;

that matter is now pending before Judge Wigenton.  See Civil Action No. 08-1761 (SDW), Docket Entry No. 1;

3.   On April 15, 2008, the Clerk received another civil complaint, executed pursuant to 42 U.S.C. § 1983; that matter is now pending before Judge Linares.  See Civil Action No. 08-1855 (JLL), Docket Entry No. 1;

4.   Finally, on April 23, 2009, the Clerk received one more civil complaint, executed pursuant to 42 U.S.C. § 1983; that matter is now pending before Judge Cavanaugh.  See Civil Action No. 08-1990 (DMC), Docket Entry No. 1.

The gist of Garcia's four above-listed actions could be summarized as follows: (1) in the instant matter, Garcia challenges his arrest and judicial handling of the ensuing criminal prosecution currently pending before two judges at the Municipal Court of the City of Union City, Hudson County, New Jersey; (2) in the action pending before Judge Cavanaugh, Garcia challenges judicial handling of Garcia's apparently different criminal prosecution pending before a judge at the Municipal Court of North Bergen Township, Hudson County, New Jersey; (3) in the action pending before Judge Linares, the complaint states a multitude of challenges related to confinement of inmates at the Facility, that is Hudson County Correctional Center; and (4) in the action pending before Judge Wigenton, the petition asserts that Garcia was provided with ineffective assistance of counsel when Garcia pled

2

guilty to shoplifting charges filed against him with the Superior Court of New Jersey, Law Division, Hudson County, on the basis of the offense Garcia committed in Jersey City, Hudson county, New Jersey (i.e., an offense different from his criminal prosecutions in municipal courts). Consequently, it appears that Garcia is currently confined pursuant to the shoplifting sentence imposed as a result of his plea agreement, while facing two different criminal charges, one in North Bergen Township and another in the Union City. The instant matter appears to be related to one of the latter, that is, the charges pending before the Municipal Court of the Union City.

Garcia duly submitted his application to prosecute this matter in forma pauperis. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the instant Complaint.

I.   **STANDARD OF REVIEW**

   A.   **RULE 8: FACTUAL PLEADING REQUIREMENT**

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff. See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The

Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See id.

The Court of Appeals for the Third Circuit recently provided a detailed and highly instructive guidance as to what kind of allegations qualify as pleadings sufficient to pass muster under the Rule 8 standard. See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008). The Court of Appeals guided as follows:

> [There are] two new concepts in Twombly [127 S. Ct. 1955 (2007)]. First, . . . "[w]hile a complaint . . . does not need detailed factual allegations, a plaintiff's [Rule 8] obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' requires [by stating] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Twombly, 127 S. Ct. at 1964-65 . . . Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Id. at 1965 n.3. . . . "[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Id. at 1966. [Hence] "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965 & n.3. Second, the Supreme Court disavowed certain language that it had used many times before -- the "no set of facts" language from Conley. See id. at 1968. . . .
> [T]he Twombly decision focuses our attention on the "context" of the required short, plain statement. Context matters in notice pleading. . . . [Thus,] taking Twombly and the Court's contemporaneous opinion in Erickson v.

Pardus, 127 S. Ct. 2197 (2007), together, we understand
the Court to instruct that a situation may arise where .
. . the factual detail in a complaint is so undeveloped
that it does not provide a defendant the type of notice
of claim which is contemplated by Rule 8.  See Airborne
Beepers & Video, Inc., v. AT&T Mobility L.L.C., 499 F.3d
663, 667 (7th Cir. 2007). . . . After Twombly, it is no
longer sufficient to allege mere elements of a cause of
action; instead "a complaint must allege facts suggestive
of the proscribed conduct."  Id. . . . .

The more difficult question raised by Twombly is
whether the Supreme Court imposed a new "plausibility"
requirement at the pleading stage that materially alters
the notice pleading regime.  . . . The Court explained
that a plaintiff must "nudge [his or her] claims across
the line from conceivable to plausible" . . . . 127 S.
Ct. at 1974. . . . "Plausibility" is related to the
requirement of a Rule 8 "showing." [Thus, while a court
cannot] dismiss[] . . . a well-pleaded complaint simply
because "it strikes a savvy judge that actual proof of
those facts is improbable," the "[f]actual allegations
must be enough to raise a right to relief above the
speculative level." Id. at 1965. [T]he pleading standard
can be summed up thus: "stating . . . a claim requires a
complaint with enough factual matter (taken as true) to
suggest" the required element.  Id.  This "does not
impose a probability requirement at the pleading stage[]"
but . . . "calls for enough facts to raise a reasonable
expectation that discovery will reveal evidence of" the
necessary element.  Id.

Phillips, 515 F.3d at 230-34 (original brackets removed).

### B.   RULES 18 and 20: JOINDER OF DEFENDANTS AND CLAIMS

Rule 20(a)(2) of the Federal Rules of Civil Procedure limits

the joinder of defendants, and Rule 18(a), governs the joinder of

claims.  See Fed. R. Civ. P. 18(a), 20(a)(2).  Rule 20(a)(2)

provides: "Persons . . . may be joined in one action as defendants

if: (A) any right to relief is asserted against them jointly,

severally, or in the alternative with respect to or arising out of

the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A) and (B).  Rule 18(a) provides : "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).  Wright & Miller's treatise on federal civil procedure explains that, where multiple defendants are named, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action.  It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18 . . .
>     Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all . . .

Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, 7 Federal Practice & Procedure Civil 3d §1655; see also United States v. Mississippi, 380 U.S. 128, 143 (1965) (where county registrars were alleged to be carrying on activities which were part of a series of transactions or occurrences the validity of which depended upon questions of law or fact common to all of them, joinder of registrars in one suit as defendants was proper under Rule 20(a));

Ross v. Meagan, 638 F. 2d 646, 650 n.5 (3d Cir. 1981), overruled on other grounds by, Neitzke v. Williams, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Consequently, a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact. See Fed. R. Civ. P. 20(a)(2). As the United States Court of Appeals for the Seventh Circuit recently explained, a prisoner may not join in one case all defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produced but also to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . .
>    A buckshot complaint that would be rejected if filed by a free person - say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions - should be rejected if filed by a prisoner.

George v. Smith, 507 F. 3d 605, 607 (7th Cir. 2007).

7

## C.    RULE 15: AMENDING A PLEADING

Ordinarily, the plaintiff may be granted "leave [to amend] when justice so requires." See Foman, 371 U.S. at 182; Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993).  Indeed, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep . . . may be decisive to the outcome and accept  the principle that the purpose of pleading is to facilitate a proper decision on the merits."  Foman, 371 U.S. at 182-83. However, while "Rule 15(a) gives the court extensive discretion to decide whether to grant leave to amend after the time for amendment as of course has passed," Alan Wright et al., Federal Practice and Procedure: Civil 2d § 1486 (2d ed. 1990), the Rule 15(a) "generous standard is tempered by the necessary power of a district court to manage a case" in light of the factors listed in Foman. See Shivangi v. Dean Witter Reynolds, Inc., 825 F.2d 885, 891 (5th Cir. 1987).  The Supreme Court has identified several factors to be considered when applying Rule 15(a):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, *futility of amendment*, etc.--the leave sought should, as the rules require, be "freely given."

Foman, 371 U.S. at 182 (emphasis supplied); see also Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands,

8

<u>Inc.</u>, 663 F.2d 419, 425 (3d Cir. 1981), <u>cert. denied</u>, 455 U.S. 1018 (1982).

It follows that the courts need not entertain futile amendments to the pleadings, e.g., amendments that aim to assert claims subject to <u>sua</u> <u>sponte</u> dismissal or to an affirmative defense incorporated either in the proposed claim or in the claims already submitted. <u>See</u>, <u>e.g.</u>, <u>Leveto v. Lapina</u>, 258 F.3d 156, 161 (3d Cir. 2001)("[A claim] may be subject to dismissal . . . when an affirmative defense . . . appears on its face") (quoting <u>ALA, Inc. v. CCAir, Inc.</u>, 29 F.3d 855, 859 (3d Cir. 1994), and citing Alan Wright et al., <u>Federal Practice and Procedure</u> § 1357, at 358-59 (1990)).

Having reviewed the applicable limitations set forth in Rules 8, 15, 18 and 20, this Court now turns to allegations set forth in Garcia's instant Complaint.


## II. <u>GARCIA'S ALLEGATIONS</u>

Garcia's Complaint is a 19-page submission consisting of a partially completed pre-printed § 1983 form and eleven pages of attachment detailing, although in a very patchy fashion, Garcia's multiple claims and listing the names of Defendants. These eleven-page patchy narrative can be roughly subdivided into three groups of allegations. The first group is dedicated to Garcia's complaints about the Office of the Mayor of the Union City, the

third group discusses the events of Garcia's arrest in the Union
City and is accompanied by a map of travel performed by Garcia and
his arresting officer, and the second group lists Garcia's
challenges to actions of the Union City municipal judges. The
allegations set forth in these three group could be summarized as
follows:

1.   Allegations against the Mayor. Garcia asserts that he went to
     the Office of the Mayor seeking to speak to the Mayor about
     what Garcia qualified as "constant harassment" by the Union
     City Police Department.  See Docket Entry No. 1, at 9.  Garcia
     alleges that the Mayor's executive assistant warned Garcia
     that the Mayor did "not take complaints for police misconduct"
     and, when Garcia was given an appointment with the Mayor, the
     Mayor "referred [Garcia] to [the] Chief of Police." Id.
     Garcia asserts that the Mayor's refusal to get personally
     involved in Garcia's complaints rendered the Mayor liable for
     all deprivation of civil rights of all citizens residing in
     the Union City and, in addition, impeded Garcia's First
     Amendment rights to free speech.  See id.

2.   Allegations against police officers.  Garcia names as
     Defendants Charles Everett, who is the Chief of Police
     Department (presumably, of the Union City), Captain Maronary,
     Captain Garcia and Patrolman Warren.  See id. at 13.  The
     allegations, taking seven pages, could be reduced to the

following three sentences: (a) on the day of the arrest, Patrolman Warren, who was in the vicinage of Garcia's whereabouts, had his police car parked and re-parked around business entities visited by Garcia; (b) Warren kept inquiring with Garcia as to where Garcia was heading, and Garcia kept responding to these inquiries with yelling, "What's the problem?" "Not of your damn business where I am going!" "For just a minute, let me be, let me live like a normal person, you fricking [sic.] people, bunch of corrupters! [sic.]" "Can't you stop harassing me, you corrupted [sic.] officer, that's all you do chase cases and harass people!"; (3) Warren arrested Garcia, and Garcia--after being charged with disorderly conduct--was released from custody the day after the arrest. Id. 9-19. The Complaint is silent as to any actions by Defendants Everett, Maronary or Garcia. See id.

3. Allegations against the judges. Garcia names as Defendants two municipal judges of the Union City. See id. at 10-12. According to Garcia, one of the judges violated his rights by: (a) refusing to talk to him when Garcia, after missing his hearing, entered another proceeding held by the judge, as well as by revoking his bail for three days as a result of the missed hearing; (b) refusing to enforce subpoena issued by an unspecified entity (who might have been Garcia himself) to Patrolman Warren; and (c) "lend[ing] the prestige of the court

11

toward [Garcia's prosecution] in a corrupt[] manner, act[ing] as [a] rubber stamp toward police misconduct," "act[ing] contrary to the canon law [and] the court rules on criminal procedure," "failing to enforce prompt disposition an accord [Garcia's prosecution] accordingly," "violat[ing Garcia's] rights of due process of equal protection of the law [and his] freedom and liberty by deliberated [sic.] delay matter without the best interest of justice," and by "abus[ing] the judiciary and her position of office to lend such prestige as to cover up corruption." Id. at 10-11. Garcia's allegations against another judge offer a shorter version of the same. See id. at 12.

Garcia seeks remedied in the form of "monetary relief," "conjunctive relief" and "impunitive damages."[1]  Id. at 7.


III. **DISCUSSION**

A.   **Claims Against the Judges**

Garcia's instant Complaint is defective for a number of reasons.  To start, the pleading presents a "buckshot" complaint, since there appears to be no transactional connection between Plaintiff's allegedly invalid arrest and his allegations that the

---

[1]

While the Court presumes that Garcia intended to seek injunctive relief and punitive damages, the allegations stated in the Complaint do not provide the Court with sufficient basis to make this assumption with the necessary degree of certainty.

12

municipal judges do not treat Garcia's criminal prosecution in the fashion he believes to be proper.  Such mix-and-match pleadings appear to stretch the limitations of Rule 20 to the degree not envisioned even by the lenient standards applied by courts to pro se applications by prisoners, see George v. Smith, 507 F. 3d at 607, and preclude this Court from entertaining Garcia's claims against the judges.

Moreover, even if Garcia's claims against the judges would not be placed outside of this Court's scope of review by the operation of Rule 20, these claims are substantively meritless.  As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute.  See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974).  The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought.  See Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984).  Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Section 1983 does not override a state's Eleventh Amendment immunity.  See Quern v. Jordan, 440 U.S. 332 (1979).

13

Therefore, Garcia's claims against the municipal judges are barred by the Eleventh Amendment,[2] since the State's judicial branch (including the municipal courts within the State) is an integral part of the State of New Jersey.  "Municipal courts provide judicial services, an area in which local governments are typically treated as 'arm[s] of the State' for Eleventh Amendment purposes, and thus enjoy the same immunity from unconsented suit as the States."  Beaver v. Burlington County Det. Ctr., 2008 U.S. Dist. LEXIS 18978, at *28-29 and n.5 (D.N.J. Mar. 11, 2008) (citing Mt. Healthy City Bd. of Ed. V. Doyle, 429 U.S. 274, 280 (1977); Callahan v. Philadelphia, 207 F.3d 668, 670-74 (3d Cir. 2000); Kelly v. Municipal Courts, 97 F.3d 902, 907-08 (7th Cir. 1996); Franceschi v. Schwartz, 57 F.3d 828, 831 (9th Cir. 1995); Knight v, City of Margate, 86 N.J. 374, 385 (1981); State v. Garcia, 297 N.J. Super. 108, 123-24 (Mun. Ct. 1996);  and N.J.S.A. 2B:12-17 and 2B:12-18).  Consequently, Garcia's claims against the municipal judges will be dismissed with prejudice, since allowing him to amend his instant Complaint or to file another matter by re-stating his claims against the municipal judges would be futile.  See Foman, 371 U.S. at 182.

---

[2]

In addition, these claims are barred by the doctrine of abstention developed since Younger v. Harris, 401 U.S. 37 (1971); the doctrine "espouse[s] a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances."  Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982).

14

**B.**   **False Arrest Claims**

**1.   Claims Against Patrolman Warren**

Garcia's five-page-and-a-chart allegations against Patrolman Warren suggest that Garcia wished to raise a false arrest challenge.  To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause.  See Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988). "Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt.  Rather, probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995) (internal citations omitted); see also Devenpeck v. Alford, 543 U.S. 146, 152-53 (2004) (A warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed).  Furthermore, just a few days ago, the United States Supreme Court clarified that, as long as "an officer has probable cause to believe a person committed even a minor crime in his presence, . . . [t]he arrest is constitutionally reasonable,"

15

even if it violates the local state law. <u>Virginia v. Moore</u>, 2008 U.S. LEXIS 3674, at *12 (U.S. Apr. 23, 2008).

Here, Garcia was arrested on the charges of disorderly conduct.[3] <u>See</u> Docket Entry No. 1, at 16. The state law, under which Garcia was arrested and charged, provides, in pertinent parts, as follows:

> A person is guilty of a petty disorderly persons offense if, in a public place, and with purpose to offend the sensibilities of a hearer or in reckless disregard of the probability of so doing, he addresses unreasonably loud and offensively coarse or abusive language, given the circumstances of the person present and the setting of the utterance, to any person present. "Public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are . . . apartment houses, places of business or amusement, or any neighborhood.

N.J.S.A. § 2C:33-2 (b).

Read against this statutory language, Garcia's Complaint spells out the basis for his arrest. Garcia: (1) admits making such statements as: "For just a minute, let me be, let me live like a normal person, you fricking people, bunch of corrupters!" and "Can't you stop harassing me, you corrupted officer, that's all you do chase cases and harass people!" Docket Entry No. 1, at 14-15; (2) admits that some of these statements were yelled to Patrolman Warren across the street, <u>see</u> <u>id.</u> at 15; and (3) states that these

---

[3]

According to the Complaint, Patrolman warren "*tried* to charge[]" Garcia with "terrorist threats, resisting arrest and aggravated assault to police" but, apparently, after so trying, charged Garcia only with "disorderless [sic.] conduct." Docket Entry No. 1, at 15-16 (emphasis supplied).

events took place in a city neighborhood where businesses (such as cafes, pharmacies and general stores) and private houses were situated.  See id. at 13-14.  Consequently, Warren had probable cause to arrest Garcia on disorderly conduct grounds under the Fourth Amendment regardless of whether it was more suitable for Warren to arrest Garcia or to merely issue him a summons.[4] Consequently, Garcia's Fourth Amendment false arrest claim against Patrolman Warren will be dismissed with prejudice.  See Foman, 371 U.S. at 182; accord Gutierrez v. Peters, 111 F.3d 1364, 1374 (7th Cir. 1997) ("[A] plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts. . . . Allegations in a complaint are binding admissions . . . and admissions can of course admit the admitter to the exit from the federal courthouse").

### 2.   *Respondeat Superior* Claims

Is well established that supervisory liability cannot be imposed under § 1983 on a respondeat superior theory.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "'A[n individual government] defendant in a civil

---

[4]   Garcia's First Amendment rights are not implicated by being arrested on the basis of his loud and offensive speech in a public place, proscribed by N.J.S.A. § 2C:33-2. See State in Interest of W.E.C., 165 N.J. Super. 161 (N.J. Super. Ct. App. Div. 1979), reversed in part on other graounds 81 N.J. 442 (1979).

rights action must have personal involvement in the alleged *wrongdoing*; liability cannot be predicated solely on the operation of <u>respondeat superior</u>.'" <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005) (emphasis supplied, quoting <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988).  It follows that the plaintiff's allegations against a supervising officials pass muster under Rule 8(a) only if the plaintiff asserts that the supervising official either directed the *wrongful* actions (while having actual knowledge of the *deprivation* of the plaintiff's constitutional rights), <u>see id.</u>; <u>Monell</u>, 436 U.S. at 694-95 (1978), or if the plaintiff asserts that the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the *harm* suffered by the plaintiff.  <u>See</u> <u>Sample v. Diecks</u>, 885 F.2d 1099, 1117-118 (3d Cir. 1989); <u>see also</u> <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989); <u>Heggenmiller v. Edna Mahan Corr. Inst.</u>, 128 Fed. App. 240 (3d Cir. 2005).  In contrast, a supervisor cannot be deemed liable for his subordinate's actions that do not violate the plaintiff's rights.  <u>See</u> <u>Hamilton v. Carell</u>, 243 F.3d 992, 1001-02 (6th Cir. 2001) (discussing derivative nature of <u>respondeat superior</u> liability); <u>see also</u> <u>Acadia v. Graduate Hosp.</u>, 2004 U.S. Dist. LEXIS 8997, at *7 (E.D. Pa. Apr. 27, 2004) ("Absent the agent's presence in the lawsuit, derivative claims against the principal are extinguished") (citing <u>Walls v. Hazleton State Gen.</u>

18

Hosp., 157 Pa. Cmwlth. 170, 177-78 (1993) (citing, in turn, Mamalis v. Atlas Van Lines, Inc., 522 Pa. 214, 560 A.2d 1380 (1989)).

Here, Garcia names as Defendants the Mayor of the Union City, plus the City's Chief of the Police Department and two police captains. See Docket Entry No. 1, at 9, 13. The Complaint is wholly silent as to the wrongs committed by the Chief of Police and police captains, and his allegations against the Mayor are not expressly tied to Garcia's arrest. See generally, id. However, Garcia's allegations (set forth in the part of his Complaint listing, as a heading, the names of the supervising officers and the Mayor) are dedicated to Garcia's arrest by Patrolman Warren. Therefore, the reader might presume that Garcia wished to allege respondeat superior liability of these officials for his arrest. However, the supervisors cannot be derivatively liable for the actions of a subordinate if the actions of the subordinate did not amount to a cognizable harm, i.e., to a violation of plaintiff's civil rights. See Hamilton, 243 F.3d at 1001-02; Acadia, 2004 U.S. Dist. LEXIS 8997, at *7. Since Garcia's arrest by Patrolman Warren did not violate Garcia's Fourth Amendment rights, Warren's supervisors or the Mayor cannot be deemed liable with respect to Garcia's this claim. Consequently, Garcia's claims to that effect will be dismissed with prejudice.

C. **Police Harassment Claims**

In alternative, this Court can read Garcia's allegations against Patrolman Warren and the supervising police officers in light of the statements made by Garcia's as part of his allegations against the Mayor. Since, according to Garcia, the Mayor should be deemed responsible for failing to address certain police practices, which Garcia interpreted as "harassment to citizens," see Docket Entry No. 1, at 9, this Court may hypothesize that Garcia intended to allege the same against the supervisory police officers and Patrolman Warren. However, the only acts of "harassment" asserted in Garcia's instant Complaint are: (1) Warren's questions to Garcia, "Where are you going?" and "Eddie, where [have] you been?" (2) the fact of Warren's parking and re-parking of his police car in the area where Garcia was operating; and (3) Warren's driving next to Garcia for a few seconds while Warren was asking Garcia the aforesaid questions. Id. at 14-15. These harmless acts cannot amount to a cognizable violation of Garcia's civil rights, even if Garcia elected to interpret these actions as "harassment." See Minnesota v. Carter, 525 U.S. 83, 102 (1998) (distinguishing a non-harassing plaint-view observation of the plaintiff by policemen from a search or trespass); Mays v. City of Dayton, 134 F.3d 809, 816-17 (6th Cir. 1998) (concluding that there is no basis in the law for a conclusion that police open-view surveillance constitutes harassment).

Generally, "police harassment, without more, cannot form
a basis for a § 1983 cause of action." <u>Arnold v.
Truemper</u>, 833 F. Supp. 678, 682 (N.D. Ill. 1993).
"Citizens do not have a constitutional right to courteous
treatment by the police. Verbal harassment and abusive
language, while 'unprofessional and inexcusable,' are
simply not sufficient to state a constitutional claim
under 42 U.S.C. § 1983." <u>Slagel v. Shell Oil Refinery</u>,
811 F. Supp. 378, 382 (C.D. Ill. 1993), <u>aff'd</u>, 23 F.3d
410 (7th Cir. 1994) (citations omitted). The
inconvenience, embarrassment or aggravation that could
result from police harassment does not rise to a
constitutional violation. <u>Arnold</u>, 833 F. Supp. at 683.
Plaintiffs' specific allegations, including the frequent
drive-bys, with or without the accompanying spotlight,
and the threat "watch it - we're going to get you and
your family," simply do not rise to the level of a
constitutional violation. Goldberg v. Weil, 707 F. Supp.
357, 361 (N.D. Ill. 1989).

<u>Harris v. City of W. Chi</u>, 2002 U.S. Dist. LEXIS 16579, at *10 (N.D.

Ill. Aug. 30, 2002). The foregoing, however, does not mean that a

plaintiff may never state a valid § 1983 claim based on police

harassment. <u>See</u> <u>Gunderson v. Schlueter</u>, 904 F.2d 407, 410 n.5 (8th

Cir. 1990) (contrasting non-intrusive police observations with

highly intrusive surveillance methods that caused the plaintiff

loss of business, as addressed in <u>McGee v. Hester</u>, 724 F.2d 89 (8th

Cir. 1983), and with a pattern of baseless arrests executed purely

for investigative purposes and without any probable cause, as

addressed in <u>Lovejoy v. Goodrich</u>, 798 F.2d 1201 (8th Cir. 1986));

<u>see also Hughes v. Patrolmen's Benevolent Ass'n of City of New

York</u>, 850 F.2d 876, 883 (2d Cir. 1988) (allegations detailing a

persistent campaign of police harassment held sufficient to

constitute a claim);[5] <u>Philadelphia Yearly Meeting of the Religious Soc'y of Friends v. Tate</u>, 519 F.2d 1335 (3d Cir. 1975) (detailed allegations of systemic police harassment can sustain cause of action under section 1983);[6] <u>accord</u> <u>San Jacinto Sav. and Loan v. Kacal</u>, 928 F.2d 697 (5th Cir. 1991) (same).[7]

---

[5]

In <u>Hughes</u>, the plaintiff, a police sergeant, asserted that, as a result of systemic campaign of harassment and false dissemination of information that the plaintiff was responsible for another police officer's suicide, the plaintiff became known as "Dr. Death," was alienated by his colleagues and involuntarily transferred to a less favorable employ, plus denied both a promotion and a pay raise.  Here, Garcia makes no allegations resembling those discussed in <u>Hughes</u>.

[6]

In <u>Philadelphia Yearly</u>, the plaintiffs were investigated by defendant police officers.  The plaintiffs brought an action claiming that these investigative activities and the dissemination of the information obtained violated their constitutional rights.  The district court dismissed the complaint for failure to state a claim, but the Court of Appeals reversed in part.  While the appellate court affirmed the dismissal of the claim regarding data gathering and the disposition of that information to law enforcement agencies (since such activity, without more, was legally unobjectionable), the court reversed the dismissal of the plaintiffs' claims regarding the dispersal of information for use other than in law enforcement and the disclosure of information-gathering activities on nationwide television without a lawful purpose, since these allegations implicated the plaintiffs' privacy rights. Here, Garcia's stated only the claims resembling those dismissed in <u>Philadelphia Yearly</u>.

[7]

In <u>San Jacinto</u>, the plaintiff business owner asserted that a systemic police harassment campaign deprived her of her right to operate a business.  The plaintiff alleged that the police harassed her patrons, prevented the patrons from entering the parking lot of her business, threatened them with arrests and made statements that drugs were bought and sold at her business.  The court held that appellant's interest in her business was a protecteable constitutional interest.  In many respects, the allegations in <u>San</u>
(continued...)

22

Although Garcia's instant harassment allegations clearly fail to state a cognizable claim, the Court cannot rule out the possibility that Garcia, if allowed to amend his pleading, might be able to state a valid claim against Patrolman Warren and his supervising police officers, or even against the Mayor. See Foman, 371 U.S. at 182-83.   Therefore, Garcia's current claims based on police harassment will be dismissed without prejudice, and he will be allowed to file an amended complaint *clarifying the facts of police harassment* underlying his legal allegations. See Twombly, 127 S. Ct. at 1965 & n.3 ("factual allegations must be enough to raise a right to relief above the speculative level").

IV.   **CONCLUSION**

For the foregoing reasons, Garcia's claims against the municipal judges will be dismissed with prejudice for failure to meet Rule 20 requirements and because these judges are absolutely immune from a § 1983 suit.

Garcia's false arrest claims will be dismissed with prejudice for failure to state a claim upon which relief may be granted.

---

[7](...continued)
Jacinto were similar to those addressed in McGee v. Hester, 724 F.2d 89.  In contrast, Garcia's instant allegations do not have any similarities with those discussed in San Jacinto or in McGee.

23

Garcia's claims based on alleged police harassment will be dismissed without prejudice, and he will be allowed to file an amended complaint curing the deficiencies of his instant pleading.

An appropriate Order accompanies this Opinion.

s/William J. Martini

**WILLIAM J. MARTINI**
**United States District Judge**

Dated: 5/12/08